Jamie G. Pleune, USB #11751
Richards Brandt Miller Nelson
299 S. Main Street, Ste. 1500
Salt Lake City, UT 84111
801-531-2000
jamie-pleune@rbmn.com

Neil Levine (*admitted pro hac vice*)
Aaron Paul (*admitted pro hac vice*)
Grand Canyon Trust
4454 Tennyson St.
Denver, CO 80212
303-455-0604
303-477-1486
nlevine@grandcanyontrust.org
apaul@grandcanyontrust.org

Samantha Ruscavage-Barz (*admitted pro hac vice*)
WildEarth Guardians
516 Alto Street
Santa Fe, NM 87501
505) 401-4180
sruscavagebarz@wildearthguardians.org

Attorneys for Plaintiffs
*WildEarth Guardians and*
*Grand Canyon Trust*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS and, GRAND CANYON TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>S.M.R. JEWELL, *et al.*,<br><br>Defendants. | ) Case No. 2:16-cv-00168-DN<br>)<br>) **PLAINTIFFS' COMBINED**<br>) **OPPOSITION TO MOTIONS TO**<br>) **INTERVENE FILED BY THE STATE**<br>) **OF UTAH (ECF Doc. 19, 20) AND**<br>) **CANYON FUEL COMPANY (ECF Doc.**<br>) **34)**<br>)<br>)<br>)<br>) |

## INTRODUCTION

Plaintiffs WildEarth Guardians and Grand Canyon Trust file this brief to respond to Motions to Intervene submitted by the State of Utah (ECF Doc. 19, 20) and Canyon Fuel Company, a subsidiary of Bowie Resources Partners LLC (ECF Doc. 34).  Plaintiffs do not dispute that both motions are timely, as Federal Defendants filed an Answer on April 15, 2016, Federal Defendants have not yet produced their administrative records, and the parties are engaged in preliminary settlement discussions.

Although Plaintiffs recognize the liberal rules governing intervention in the Tenth Circuit, Movants have the burden to establish intervenor status under Rule 24(a), and here Canyon Fuel Company and the State of Utah have not made the required showings.  The State of Utah's alleged economic interest is stated too vaguely to properly evaluate, and neither its alleged economic interest nor its claimed regulatory interest is tied to Federal Defendants' Flat Canyon coal leasing decisions that Plaintiffs are challenging.  Other than conclusory assertions, Canyon Fuel provides no support to claim a legally protected interest that may be impaired – in some respects, publicly available documents reflect otherwise.  And furthermore, Canyon Fuel Company and the State fail to demonstrate that the Bureau of Land Management (BLM) and the Forest Service will not adequately represent their interests in this litigation.

## STATEMENT OF ISSUES AND FACTS

### A.   LEGAL BACKGROUND

A third of the nation's coal is found below public lands and thus is owned by the United States public.  BLM regulates this public resource under the Mineral Leasing Act and its implementing regulations. 30 U.S.C. §§ 181-287.  BLM may lease the public lands for developing coal deposits after making certain findings, including one ensuring that issuing the

lease is not "contrary to the public interest." 43 C.F.R. § 3425.1-8; *see* ECF 13-1 at 34

(Plaintiffs' Claim 4).  Under the Mineral Leasing Act, a lessee must pay fair market value for the

ability to mine federal coal and pay production royalties to the federal government (8% for

underground mines, 12.5% for surface mines, though various rate reductions are often applied)

that are subsequently apportioned to the state where the lease is situated. 30 U.S.C. § 191(a).[1]

When the coal deposits underlie National Forests, the Forest Service must review the

leasing proposal and provide BLM with "consent," which may include conditions to protect non-

coal resources, before a lease is issued. 30 U.S.C. § 201(a)(3)(A)(iii); 43 C.F.R. § 3425.3(b);

§ 3427.1.  BLM and the Forest Service must assess the environmental impacts of issuing a coal

lease under the National Environmental Policy Act (NEPA). 42 U.S.C. § 4332(C); *see* ECF 13-1

at 30-34 (Plaintiffs' Claims 1-3).

## B.    THE SKYLINE MINE, ITS OWNERS AND OPERATORS

The Skyline Mine is an underground coal mine located on Forest Service lands in central

Utah under a federal special-use permit. 65 Fed. Reg. 14,523.  In 1980, the Canyon Fuel

Company, a Colorado-based subsidiary of Arch Coal at the time, built the Mine's facilities and

subsurface workings (shafts and adits) and mining operations began shortly thereafter.

In 2004, Arch Coal suspended all operations at Skyline Mine because of a depressed coal

market and because it had other available sources of coal in Utah.  At that time, the Mine

employed over 200 people and produced 3.5 million tons of coal annually.  Mining operations

---

[1]      The financial return that the United States public receives from lessees is inadequate, according to, among others, the General Accounting Office and the Department of Interior's Office of Inspector General. 81 Fed. Reg. 17,720, 17723-24 (March 30, 2016).  This prompted the Department of the Interior to initiate a programmatic review of the federal coal leasing program and decide whether to revise royalties rates to ensure "American taxpayers are receiving a fair return." *Id*. at 17721.

were suspended indefinitely and layoffs began in 2003.  Arch Coal reopened Skyline Mine in 2005.

In August 2013, Bowie Resources Partners LLC, the mining giant headquartered in Kentucky, purchased the coal-related assets held by Arch Coal located in Utah.  These assets included the Canyon Fuel Company and the Skyline Mine.  In addition to the Skyline Mine, Canyon Fuel Company owns two other Utah coal mines – Sufco Mine and Dugout Canyon Mine.  Like Arch Coal, Bowie Resources sells coal from these three mines to regional coal plants (including the Huntington and Hunter plants, which are located near the Skyline Mine in central Utah) and ships coal overseas to Southeast Asia.

## C.      THE WINTER QUARTERS COAL LEASE AND LEASE MODIFICATION

Since at least 1996, Skyline Mine has been operating under a 3,300-acre federal coal lease known as Winter Quarters, which contains approximately 24.1 million tons of coal.  The Mine and the Winter Quarters lease are located southwest of Scofield, Utah, north of Electric Lake, in the Manti-La Sal National Forest.  Neither the Mine's facilities nor any of the lands being mined for coal are located on state land.

In response to a 2010 application by Arch Coal and Canyon Fuel Company, the Winter Quarters lease was expanded by 770 acres and 6.9 million tons of coal.  BLM and the Forest Service approved this lease modification on December 15, 2011, after completing an environmental assessment under NEPA in November 2011.  According to the 2011 environmental assessment, the Winter Quarters lease modification was necessary to extend the life of Skyline Mine by 2-3 years.[2]

---

[2]      The Environmental Assessment also reported that, in 2011, Skyline Mine had two years of coal reserves left, and that "[n]o future extension of the Skyline Mine is anticipated beyond" the Winter Quarters lease modification. Environmental Assessment for Modification of Winter

D.      **FLAT CANYON COAL LEASE**

Long before the Winter Quarters lease modification, on March 18, 1998, Canyon Fuel applied to lease the 2,692-acre Flat Canyon coal lease, which contains between 36 and 42 million tons of coal reserves. 65 Fed. Reg. 14,523.[3]  The Flat Canyon lease, located immediately west of the coal deposits found within the Winter Quarters leased areas, will extend the mine's life by 9-12 years, depending on annual production rates and the coal market. *Id*.  Canyon Fuel viewed the Flat Canyon lease as a means to expand the Skyline Mine, representing to BLM and the Forest Service that it needed to move into this leased area by "late 2001 or early 2002." Final EIS for the Flat Canyon Coal Lease, at S-1.

BLM and the Forest Service jointly prepared an Environmental Impact Statement for the Flat Canyon lease. 65 Fed. Reg. 14,523, 66 Fed. Reg. 39,191.  This NEPA analysis reviewed mining operations on the Flat Canyon coal lease as well as coal reserves found below an adjacent 1,100 acres of private land that Canyon Fuel intended to mine.  The final Environmental Impact Statement was released on January 3, 2002, and BLM issued a Record of Decision to complete the NEPA process on April 11, 2002.  In the Record of Decision, BLM announced that it would "offer for lease by competitive bid the Flat Canyon Coal Tract" assuming the Forest Service provided its consent.

However, the Forest Service did not provide its consent and BLM did not issue the lease. Despite representing it needed the coal reserves by "late 2001 or early 2002," Arch Coal, on

---

Quarters Federal Coal Lease, at 31.  A recent report by the State of Utah appears inconsistent with these statements, revealing that in 2015, "Canyon Fuel estimates that about 11.8 million [short tons] of coal can be recovered from current leases." Utah Geological Survey Circular 120 at 22-23 (Available at: http://geology.utah.gov/map-pub/new-maps-publications/).  "Current leases" could not have included the unissued Flat Canyon lease. *Id*.

[3]      The amount of coal available in the Flat Canyon coal lease has not been reported consistently.  The most recent amount, as revealed on February 26, 2015, is "approximately 41 million ton of coal." BLM's Determination of NEPA Adequacy at 5.

behalf of Canyon Fuel Company, requested in June 2002 that the agencies not implement their

decisions and instead put the lease on hold indefinitely.  Through this requested delay, Arch Coal

eliminated its risk of having the lease terminated under the Mineral Leasing Act's requirement

that a lessee produce coal in commercial quantities within 10 years of lease issuance. 30 U.S.C. §

207(a).  In addition, once a lease is issued, BLM collects a lease rental fee until extraction

activities begin and Arch Coal was able to forego this expense by deferring lease issuance.

In 2012, Arch Coal expressed renewed interest in the Flat Canyon coal lease.

Responding to a June 14, 2012 BLM letter to this effect, the Forest Service initiated a process to

determine whether additional NEPA review was necessary to consent to the Flat Canyon lease.

The Forest Service explained that it had been over ten years since the 2002 Environmental

Impact Statement and the agency had never implemented its consent decision under the Mineral

Leasing Act.

Accordingly, on February 1, 2013, the Forest Service issued a Supplemental Information

Report (SIR), concluding that a Supplemental Environmental Impact Statement (*see* 40 C.F.R. §

1502.9(c); Forest Service NEPA Handbook, Chapter 18) was not needed because new

information about the lease's environmental impacts was not significant.  The Forest Service

then immediately provided its consent to BLM on February 4, 2013. 80 Fed. Reg. 28,002, 28,003

(May 15, 2015).

Inexplicably, however, BLM did not act after receiving the Forest Service's consent.

Over two years after the Forest Service provided its consent, on February 26, 2015, BLM

completed a Determination of NEPA Adequacy to address the sufficiency of the 2002

Environmental Impact Statement.  BLM did not conduct its own review, but instead largely

relied on the Forest Service's 2013 Supplemental Information Report, explaining "the SIR

indicates that there is no new information available and circumstances have not changed significantly." BLM Determination of NEPA Adequacy at 9; *id*. at 7-8 ("The Forest Service determined that no new information or circumstances exist."). BLM thus concluded that no Supplement Environmental Impact Statement was required.

Having believed it completed the NEPA process, BLM noticed a competitive lease sale on May 15, 2015 (80 Fed. Reg. 28,002), which took place on June 17, 2015. BLM then issued the Flat Canyon coal lease to Canyon Fuel Company on July 31, 2015.

## E.    PLAINTIFFS' LAWSUIT

Plaintiffs filed this lawsuit on September 11, 2015 to challenge the Federal Defendants' decisions to issue the Flat Canyon lease. As set forth in the Amended Complaint (ECF Doc. 13-1), Plaintiffs allege violations of NEPA and the Mineral Leasing Act. Specifically, the agencies were required to prepare and make available for public comment a Supplemental Environmental Impact Statement that updates their analysis, instead of relying on a stale, decade-old 2002 EIS for assessing the impacts of the coal lease; their respective evaluations of new information and changed circumstances do not comply with NEPA; and BLM failed to determine whether lease issuance was contrary to the public interest, including the environmental impacts associated with coal combustion.[4] Until Federal Defendants correct these violations of NEPA and the Mineral Leasing Act, Plaintiffs have asked the Court to vacate the Flat Canyon lease and prohibit the issuance of a new lease. ECF 13-1 at 35.

---

[4]      One of the main issues this lawsuit raises is Federal Defendants' complete failure to analyze the new information about the impacts of climate change, which results from burning coal generated from the Flat Canyon coal lease, other leases at the Skyline Mine like the Winter Quarters leases, and coal mined from similar leases in Utah, Colorado, Wyoming and Montana.

**ARGUMENT**

**A.    THE TEST FOR INTERVENTION OF RIGHT HAS NOT BEEN MET**

Rule 24(a) sets forth the standards for "intervention of right:"

(1) the motion to intervene must be timely;

(2) the movant must have an interest relating to the subject of the action;

(3) the movant must be situated such that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and,

(4) the movant's interests must be inadequately represented by the existing parties to the suit.

Fed. R. Civ. P. 24(a)(2).  Courts analyze these four factors in a practical manner. *San Juan County v. United States,* 503 F.3d 1163, 1193 (10th Cir. 2007) (*en banc*); *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1249 (10th Cir. 2001).[5]

1.    <u>Neither Movant Has Demonstrated A Legally Protectable Interest That May Be Impaired By This Litigation</u>

Applicants for intervention "must have an interest that could be adversely affected by the litigation." *San Juan*, 503 F.3d 1199.  The "interest" element is looks to the property or transaction that is the subject of the action." *Utah Ass'n of Counties,* 255 F.3d at 1251.  The burden is on the applicant to demonstrate that the litigation may impair its interest, although "[t]his burden is minimal." *Id.* at 1253; *WildEarth Guardians v. USFS*, 573 F.3d 992, 995 (10th Cir. 2009).

a.    <u>Utah's Interests Are Based On The Skyline Mine, and Not The Flat Canyon Coal Lease</u>

Utah claims an "interest in the continued operation of the coal mine" because the Mine "is the source of a significant stream of revenue." ECF Doc. 20 at 2.  Utah also says it has an

---

[5]    Plaintiffs do not contest the timeliness of the two motions.

interest in the "continued regulation of said mine." *Id*.  The lawsuit, according to the State, may impair these interests. *Id*.

The overarching defect in Utah's Motion is that its claimed interests relate to the Skyline Mine, and not the Flat Canyon lease. ECF Doc. 20 at 2.  This is significant because, for one thing, Utah's interest in regulating Skyline Mine will be completely unaffected by the outcome of this litigation.  Utah's regulatory obligations as they relate to the Skyline Mine and other federal coal leases will not change if Plaintiffs win this case.  This lawsuit challenges the Flat Canyon lease, not Utah's approvals relating to the Skyline Mine and other coal leases.  Vacating the Flat Canyon coal lease would not prevent or interfere with other mining permits that Utah may have issued relating to the Skyline Mine.

Further, Utah had no role in the issuance of the Flat Canyon lease.  BLM and the Forest Service had sole jurisdiction to approve and condition this coal lease under the Mineral Leasing Act.  Thus, Utah would not be intervening to uphold *its* leasing decision.

Utah fails to explain how *not* having to undertake a future regulatory action on the Flat Canyon coal lease would impair its interest.  It is true that once a federal coal lease is issued, under the Surface Mining Control and Reclamation Act (SMCRA), delegated states like Utah are charged with reviewing a permit application for the leased coal.  Yet, should Plaintiffs succeed and the Flat Canyon coal lease is vacated, Utah would avoid having to spend public funds to process a permit application under SMCRA, and related state rules, until BLM and the Forest Service complete the required NEPA and Mineral Leasing Act review.  Utah's regulatory processes would not be circumvented in that scenario, and other SMCRA permits for leases associated with the Skyline Mine would be unaffected.[6]

---

[6]     Utah's reliance of the Fifth Circuit's ruling in *Sierra Club v. City of San Antonio* fails for

As for its claimed economic interest, Utah again fails to tie that interest to the Flat Canyon lease, referencing instead the Skyline Mine.  Notably, royalties that companies pay to the U.S. government pursuant to the Mineral Leasing Act – a production tax based on the value of coal extracted annually – accrue from a federal coal lease, and do not flow from the mine. 30 U.S.C. § 191; *see generally* 30 C.F.R. § 1206.251 *et seq*.  Moreover, the royalties that Utah currently receives are not tied to the Flat Canyon coal lease, but are from other pre-existing leases that have been producing coal.  No royalty payments from the Flat Canyon coal lease are currently available. *See* 30 C.F.R. § 1206.255 (stating royalties are calculated and distributed after coal is produced – "used, sold or otherwise finally disposed").  And none of the statistics Utah offers up regarding coal production at the Skyline Mine (ECF Doc. 20 at 8) concern the challenged Flat Canyon coal lease.  That information predates the issuance of the Flat Canyon coal lease on July 31, 2015, and Canyon Fuel has not obtained the necessary approvals to produce coal from the Flat Canyon lease. *See e.g.*, 30 C.F.R. § 746.11 (requiring Department of Interior to approve mining plans under Mineral Leasing Act).

Future royalties from the Flat Canyon coal lease are too speculative to support intervention.  No one has said whether Canyon Fuel Company intends to mine any coal from Flat Canyon lease, and if it does, when mining might start and in what proportion to the other existing coal leases serving the Skyline Mine.  Prior events underscore this uncertainty.  In 2002, Canyon Fuel Company asked the federal agencies not to issue the lease, even though the agencies had completed their review and approval processes.  A decade later, Canyon Fuel requested that the lease issue, but even then the company was apparently fine with an additional two-year delay by

---

this reason. *See* ECF Doc. 20 at 5.  There, a lawsuit presented potential conflicts with implementing a state law designed to regulate the water withdrawals from an underground aquifer would be bypassed by. *Sierra Club*, 115 F.3d at 312.

BLM.  Moreover, the State's own report indicates that the Winter Quarters leases have almost 12 million tons of coal reserves left, such that production from the Flat Canyon coal lease is not certain in the foreseeable future, especially considering the abysmal shape that the coal market is in.[7]

Accordingly, the State's interest in "an uninterrupted revenue stream" (ECF Doc. 20 at 9) does not relate to the Flat Canyon lease and this litigation.  Coal produced for the Skyline Mine has been continuous for years without the Flat Canyon coal lease and the available evidence shows that the status quo will continue.

Utah also offers no evidence for its claim that the revenue stream from the Flat Canyon coal lease is – or would be – "substantial" and "vital" to the State's economy. *See* ECF Doc. 20 at 7, 9.  These characterizations are overly vague and do not comport with applicable law.  For instance, Utah is not free to use royalty monies as it chooses.  Rather, under the Mineral Leasing Act, those funds are to go to "those subdivisions of the State socially or economically impacted by development of minerals leased" for "(1) planning, (2) construction and maintenance of public facilities, and (3) provision of public service." 30 U.S.C. § 191(a).  Further, Utah provides no context or support for its "vital" characterization.  Utah fails to compare this revenue source to the State's cumulative revenues or other similar sources of revenue.  Finally, the State fails to detail the expected amount of annual revenues, if any, from the Flat Canyon coal lease.  Although Utah states *Skyline Mine* contributed $4.75 million in 2015 (ECF Doc. 20 at 8), this money was not derived from the Flat Canyon lease because it was not issued until July 31, 2015 and additional approval actions remain before coal can be produced.[8]

---

[7]     Utah Geological Survey Circular 120 at 22-23 (Available at: http://geology.utah.gov/map-pub/new-maps-publications/).

[8]     Utah mentions that the Skyline Mine provides over 200 jobs, but these jobs will continue

b.    Canyon Fuels Company

Canyon Fuel has not met its burden demonstrating that a coal lease satisfies the test for a "substantial legal interest." *See Utah Ass'n of Counties,* 255 F.3d at 1253.  The company's Motion lacks factual support altogether, and fails to explain how a coal lease equates to a "legal interest."[9]  Canyon Fuel relies heavily on *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009). ECF Doc. 34 at 5-6.  But that case did not address whether a coal *lease* constitutes a legal interest, only whether a mining plan of operations, which is a different federal agency approval that authorizes mining activities, would be impaired by the lawsuit.

On the "impairment" element, Canyon Fuel states that an adverse decision "could halt active mining." ECF Doc. 34 at 7.  Canyon Fuel provides no explanation or supporting evidence that vacating the lease would require the Skyline Mine to close.  To the contrary, Canyon Fuel has been operating the Skyline Mine since the early 1980s without the Flat Canyon coal lease and is currently mining the Winter Quarters leases that apparently has plenty of coal (about 11.8 million tons) remaining.

The necessity of the Flat Canyon coal lease for Skyline Mine is questionable.  Long after the agencies initiated the review process for the Flat Canyon lease, in June 2002, Canyon Fuels asked BLM and the Forest Service to defer issuing the lease indefinitely.  At that time and for years thereafter, the company did not require the Flat Canyon lease in order to operate the Skyline Mine.  And more recently, instead of mining the Flat Canyon lease, Canyon Fuel chose to have its Winter Quarters lease expanded in December 2011.  The coal reserves within the

_____

for the foreseeable future because of coal reserves are available under other pre-existing leases. It is more likely that jobs will be lost should Canyon Fuel choose to lay off workers because of a depressed coal market, as it did in 2003.

[9]     Canyon Fuel explains its Motion's brevity by stating that "CFC's motion is unopposed." ECF Doc. 34 at 6.  But elsewhere in the Motion, the company correctly states that "Plaintiffs, however, reserve the right to file a response." *Id*. at 2.

Winter Quarters lease modification (6.9 million tons) were deemed sufficient by the company for operating Skyline Mine.  The Court should give little credit to Canyon Fuel's overstated economic argument (ECF Doc. 34 at 7) because the company itself has not viewed the Flat Canyon coal lease as a serious investment where immediate coal production is necessary.

Canyon Fuel similarly asserts, in a wholly conclusory fashion, that the lawsuit will cause "severe consequences for future mining." ECF Doc. 34 at 7.  Again, future coal production at Skyline Mine will continue under pre-existing coal leases.  Canyon Fuels fails to explain whether, and if so when, it intends to mine the Flat Canyon lease.  If it is not going to mine Flat Canyon any time soon, it is hard to see how vacating the lease until BLM and the Forest Service comply with NEPA and the Mineral Leasing Act could cause "severe consequences for future mining."

2.    Federal Defendants Adequately Represent Utah and Canyon Fuel's Interests

An applicant for intervention must demonstrate that existing parties – BLM and the Forest Service in this case – will not adequately represent its interest in the lawsuit. *Utah Ass'n of Counties*, 255 F.3d at 1254.  This burden may be "minimal," but it still requires the applicant to "show the possibility of inadequate representation." *WildEarth Guardians*, 573 F.3d at 996.

BLM and the Forest Service are pursuing the exact same objective in this litigation as Canyon Fuel and Utah: trying to persuade the Court that the Flat Canyon coal lease was issued in compliance with NEPA and the Mineral Leasing Act.  Canyon Fuel and Utah do not contend that the federal agencies have a different goal or provided evidence that Federal Defendants will not vigorously defend themselves.  The burden for inadequate representation is on the movants, and neither Canyon Fuel nor the State makes the requisite showing.  Neither articulates how their

positions deviate from the Federal Defendants, and how any divergence in interest translates to the agencies not adequately representing the Movants.

Canyon Fuels argues that the government represents the "public generally" and not private interests. ECF Doc. 34 at 7.  The company fails, however, to explain how this purported differing interest means Federal Defendants *in this case* will not be able to adequately represent Canyon Fuel.  To the extent the Federal agencies have a broader mandate and necessarily consider the public's interests in their decision-making, as Canyon Fuel contends, those same broader interests must have been accounted for in the Flat Canyon leasing decision.  BLM and the Forest Service have not changed their leasing decision.  Accordingly, there is no reason to believe that Federal Defendants' representation of the "public generally" will prevent the agencies from adequately representing Canyon Fuel and Utah in this lawsuit.[10]

The State contends that its interests in regulating mining operations and protecting State revenues "differ from the Federal Defendants' interest in defending the adequacy of their NEPA analysis." *See* ECF Doc. 20 at 9.  This argument on the "inadequate representation" is nonsensical.  Regardless of its interests, in this lawsuit, Utah as an intervenor would be defending BLM and the Forest Service's NEPA analysis because Claims 1-3 in the Amended Complaint alleged NEPA violations.  What else would the State do if not defend the adequacy of the Federal Defendants' NEPA analysis?  Utah's economic and regulatory interests simply are not factors pertinent to the "inadequate representation" question.

---

[10]     Of course, Utah cannot rely on Federal Defendants' public interests to demonstrate inadequate representation because it too represents the "public generally."

**B.       PERMISSIVE INTERVENTION SHOULD DENIED OR LIMITED**

Rule 24(b) provides that, upon timely motion, a court may permit intervention if the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  The decision whether to grant permissive intervention is left to the "sound discretion" of the district court. *United Nuclear v. Cranford Ins.*, 905 F.2d 1424, 1427 (10th Cir. 1990).  In exercising its discretion, a court may consider (1) "whether the would-be intervenor's input adds value to the existing litigation," (2) "whether the petitioner's interests are adequately represented by the existing parties," and (3) "the availability of an adequate remedy in another action." *Lower Arkansas Valley Water Conservancy District v. United States*, 252 F.R.D. 687, 690-91 (D. Colo. 2008).  As detailed above, neither Canyon Fuel Company nor the State of Utah has shown that BLM and the Forest Service will not adequately represent their interests.  The Court should thus deny Canyon Fuel and Utah permissive intervention.

Should the Court nonetheless allow intervention under Rule 24(b), Plaintiffs respectfully request that Movants' participation be limited: Canyon Fuel and Utah should be required to coordinate with Federal Defendants on all motions and briefs so as to avoid repetitive briefing and, if they do not join the motions and briefs filed by the Federal Defendants, they should not file briefs longer than 10 pages to ensure the case is litigated efficiently.

CONCLUSION

For the foregoing reasons, Movants should be denied intervention under Rule 24(a) and (b).  Alternatively, should the Court exercise its discretion under Rule 24(b), Movants' participation should be limited.

Dated: April 18, 2016                    */s/ Neil Levine*
                                         Neil Levine
                                         Aaron M. Paul
                                         Grand Canyon Trust

                                         Samantha Ruscavage-Barz
                                         WildEarth Guardians

                                         Jamie G. Pleune, USB #11751
                                         Richards Brandt Miller Nelson

                                         Attorneys for Plaintiffs
                                         *WildEarth Guardians and*
                                         *Grand Canyon Trust*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April, 2016, I electronically filed this

PLAINTIFFS' COMBINED OPPOSTION TO MOTIONS TO INTERVENE BY CANYON

FUEL COMPANY AND STATE OF UTAH with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing on all counsel of record.


_s/ Neil Levine_
Neil Levine