IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WILDEARTH GUARDIANS, and GRAND CANYON TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>RYAN ZINKE, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXPAND RECORD AND CONDUCT LIMITED DISCOVERY**<br><br>Case No. 2:16-cv-00168-DN<br><br>District Judge David Nuffer |

Plaintiffs WildEarth Guardians and Grand Canyon Trust (collectively, "WildEarth") have filed a motion (the "Motion")[1] for: (1) the addition of certain documents to the administrative record; (2) permission "to conduct limited discovery to fill gaps in the records"; and (3) adjudication of WildEarth's "failure-to-act" claim "without limiting the scope of review to

---

[1] Plaintiffs' Motion to Add Documents to the Administrative Record and Authorize Limited Discovery ("Motion"), docket no. 70, filed September 29, 2016; *see* Canyon Fuel Company's Opposition to Plaintiffs' Motion to Add Documents to the Administrative Record and to Authorize Limited Discovery, docket no. 75, filed November 8, 2016; State of Utah's Opposition to Plaintiffs' Motion to Add Documents to the Administrative Record and to Authorize Limited Discovery, docket no. 76, filed November 8, 2016; Federal Defendants' Opposition to Plaintiffs' Motion to Add Documents to the Administrative Record and to Authorize Limited Discovery ("Opposition"), docket no. 77, filed November 8, 2016; Reply Memorandum in Support of Plaintiffs' Motion to Add Documents to the Administrative Record and Authorize Limited Discovery ("Reply"), docket no. 79, filed November 25, 2016; Federal Defendants' Notice of Supplemental Authority in Support of Their Opposition to Plaintiffs' Motion to Supplement the Administrative Record, docket no. 80, filed January 13, 2017; Plaintiffs' Response to Federal Defendants' Notice of Supplemental Authority Pertaining to Plaintiffs' Motion to Add Documents to the Administrative Record and Authorize Limited Discovery, docket no. 81, filed January 19, 2017; Supplemental Brief in Opposition to Plaintiffs' Motion to Add Documents to the Administrative [Record] and for Limited Discovery ("Opposing Supplement"), docket no. 88, filed June 16, 2017; Court-Ordered Supplemental Memorandum Concerning Plaintiffs' Motion to Add Documents to the Administrative Record and Authorize Limited Discovery ("Supporting Supplement"), docket no. 89, filed June 16, 2017; State of Utah's Brief in Response to Court Order Requesting Supplemental Briefing and in Opposition to Plaintiffs' Motion to Add Documents to the Administrative Record and for Limited Discovery, docket no. 90, filed June 16, 2017; Canyon Fuel Company's Supplemental Brief Regarding Plaintiffs' Motion to Add Documents to the Administrative Record and Authorize Limited Discovery, docket no. 91, filed June 16, 2017.

elm

the administrative records."[2] For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

**TABLE OF CONTENTS**

Background ............................................................................................................................2
Discussion .............................................................................................................................4
    Some materials should be added to complete or supplement the record. ...........................5
        The BLM's fair-market-value analysis should be added. .......................................5
        Exhibit 34 should be added. .....................................................................................6
        Air-quality permits and emission data should be added. ........................................6
    Some materials are not needed to complete or supplement the record. ...............................8
        Exhibits 18–31 will not be added. ............................................................................8
        Regional lease documents will not be added. ..........................................................8
        Greater sage-grouse publications will not be added. ...............................................9
    Discovery is unnecessary. ...................................................................................................10
    Arguments regarding the "failure-to-act" claim are moot. .................................................11
Order .....................................................................................................................................11

# BACKGROUND

The U.S. Bureau of Land Management ("BLM") is an agency within the U.S. Department of the Interior. The BLM is responsible for approving applications to lease public lands for the development of federally owned coal and other mineral deposits in accordance with applicable laws, including the Mineral Leasing Act ("MLA")[3] and National Environmental Policy Act ("NEPA").[4] Before the BLM can approve a lease application, the MLA and NEPA require the BLM to prepare either an environmental assessment or an environmental impact statement ("EIS") to evaluate the lease's effects and determine whether it is in the public

---

[2] Motion, *supra* note 1, at 1-2.

[3] 30 U.S.C. § 181 et seq.

[4] 42 U.S.C. § 4321 et seq.

interest.[5] If "[t]here are significant new circumstances or information relevant to environmental concerns and bearings on the proposed action or its impacts," a supplement to an EIS is required.[6] And where the lease "cover[s] lands the surface of which is under the jurisdiction of" the U.S. Forest Service ("FS"), the lease "may be issued only upon consent of" the FS.[7]

On or about March 6,1998, Canyon Fuel Company ("CFC")[8] submitted an application to the BLM to lease a tract of public land in Utah for coal mining.[9] This tract, which the parties refer to as the "Flat Canyon Tract," is on lands within the FS's jurisdiction. On January 3, 2002, the BLM and FS jointly issued a final environmental impact statement ("FEIS") for the proposed lease ("Lease").[10] On April 11, 2002, the BLM authorized the Lease,[11] but soon thereafter CFC decided not to pursue it.[12] As a result, the Lease was not "fully approved" at that time.[13]

Approximately ten years later, CFC again expressed interest in the Lease.[14] Because so much time had passed, the BLM and FS initially believed that the FEIS may be "stale"[15] and that the FES "would not be adequate for leasing without a supplement."[16] However, after further

---

[5] *See* 42 U.S.C. § 4332(C)(i); 40 C.F.R. §§ 1501.3, 1501.4, 1502.14, 1502.16, 1508.9; 43 C.F.R. §§ 3425.1-8(a)(3), 3425.3(a).

[6] 40 C.F.R. § 1502.9(c)(1)(ii).

[7] 30 U.S.C. § 201(a)(3)(A)(iii); *see* 43 C.F.R. § 3427.1.

[8] CFC is an intervenor in this case.

[9] Letter from CFC to BLM, docket no. 70-1, dated March 6, 1998.

[10] *See* Final Environmental Impact Statement ("FEIS"), docket no. 70-17, filed September 29, 2016; *see also* Letter from CFC to BLM, *supra* note 9.

[11] *See* Record of Decision, docket no. 70-33, dated April 11, 2002.

[12] *See* E-mails Between BLM and FS, at BLM002882, docket no. 70-2, dated February 2, 2011.

[13] *See id.*; Letter from CFC to BLM, docket no. 70-3, dated April 8, 2010; Letter from FS to BLM, docket no. 70-10, dated February 4, 2013.

[14] *See* Letter from BLM to FS, docket no. 70-4, stamped June 14, 2012.

[15] Letter from FS to BLM, docket no. 70-6, dated July 9, 2012.

[16] Letter from BLM to FS, *supra* note 14.

evaluation, both agencies concluded that the Lease could proceed without supplementing the FEIS.[17] On July 31, 2015, the BLM issued the Lease to CFC without supplementing the FEIS.[18]

## DISCUSSION

WildEarth commenced this action for judicial review under the Administrative Procedure Act ("APA")[19] to challenge the actions of the BLM and FS related to the Lease.[20] A court reviewing the action of an agency under the APA must, in making its determinations, "review the whole record or those parts of it cited by a party."[21] This necessarily requires the "whole record" on which the agency acted to be before the court.[22] "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency."[23]

An agency cannot "unilaterally determine what constitutes the Administrative Record" or "supplement the Administrative Record submitted to the district court with post hoc rationalizations for its decision."[24] "However, the designation of the Administrative Record . . . is entitled to a presumption of administrative regularity."[25] Absent *clear* evidence to the contrary,

---

[17] *See* Supplemental Information Report ("SIR"), docket no. 70-7, dated February 1, 2013; Determination of NEPA Adequacy ("DNA"), docket no. 70-8, dated February 2015.

[18] *See* Letter from BLM to WildEarth Guardians, docket no. 70-16, dated September 29, 2016.

[19] 5 U.S.C. §§ 701-706.

[20] Second Amended Complaint ¶ 3, docket no. 83, filed February 24, 2017.

[21] 5 U.S.C. § 706.

[22] *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993).

[23] *Id.*

[24] *Id.* at 739-40 (citations omitted).

[25] *Id.* at 740 (citation omitted).

courts assume that the record is proper[26] and generally limit their review to that record.[27] While any exception to this general rule is "extremely limited,"[28] possible justifications include:

> (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong.[29]

In this Motion, WildEarth requests that certain material be added to the administrative record, that it be allowed to conduct limited fact discovery, and that consideration of its "failure-to-act" claim not be confined to documents in the administrative record.

**Some materials should be added to complete or supplement the record.**

*The BLM's fair-market-value analysis should be added.*

WildEarth contends that the administrative record is incomplete because it does not include the BLM's analysis of the fair market value ("FMV") of the Flat Canyon Tract's coal reserves, which analysis began on January 23, 2015, and was completed on April 29, 2015.[30] Although the BLM admits that it was "statutorily required to ensure it receive[d]" FMV for the "coal being sold,"[31] it argues that the analysis in question "was not considered for purposes of

---

[26] *Id.*

[27] *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1027 n.1 (10th Cir. 2001); *see Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.").

[28] *Am. Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985).

[29] *Custer County*, 256 F.3d at 1027 n.1 (citing *Am. Mining*, 772 F.2d at 626).

[30] *See* Motion, *supra* note 1, at 10-11; Reply, *supra* note 1, at 2-4.

[31] Declaration of Kent Hoffman ¶ 6, docket no. 77-2, dated November 8, 2016. Hoffman's declaration indicates that he has held his current position at the BLM since May 2002—a date subsequent to completion of the FEIS. *See id.*

making the challenged decision" because "the FMV process was completed after the BLM completed its [NEPA] processes for the lease sale" in 2002.[32] Even if the BLM did not consider this analysis in making its decision to lease the Flat Canyon Tract *in 2002*, the evidence is clear that the BLM did consider this analysis, directly or indirectly, in making its decision to lease the Flat Canyon Tract *in 2015*.[33] As a result, the BLM's FMV analysis is necessary to complete the record, and the Motion is GRANTED with respect to it.[34]

*Exhibit 34 should be added.*

WildEarth attached a copy of a 2013 report on the greater sage-grouse to the Motion as "Exhibit 34."[35] WildEarth asks that this exhibit be added to the administrative record.[36] Because the BLM admits that it considered the information in this exhibit in making its decision to lease the Flat Canyon Tract,[37] it is clear that Exhibit 34 is necessary to complete the administrative record. Accordingly, the Motion is GRANTED as to Exhibit 34.

*Air-quality permits and emission data should be added.*

The FEIS expressly states that emissions at CFC's facilities adjacent to the Flat Canyon Tract "currently meet air quality standards and the Permit-to-Construct issued by the Utah

---

¶ 1. There is no indication in his declaration that he had any involvement with, or has any personal knowledge concerning, preparation of the FEIS. There is also no indication in his declaration as to what the FS considered at any time.

[32] *Id.*

[33] *See, e.g.*, Letter from BLM to WildEarth Guardians, *supra* note 18.

[34] To protect the confidentiality of this document, the BLM may cause it to be disclosed subject to the Standard Protective Order set forth in DUCivR 26-2(a).

[35] Conservation Objectives Team Report and Cover Letter, docket no. 70-34, stamped March 22, 2013.

[36] Motion, *supra* note 1, at 26-29.

[37] Declaration of Kent Hoffman, *supra* note 31, ¶ 9.

6

Department of Air Quality," and that the Lease "would not lead to additional emissions."[38] The supplemental information report ("SIR"), which the BLM and FS later prepared and relied on, repeats this statement verbatim and adds: "The air quality permit is primarily concerned with dust deriving from how much coal is moved on the surface of the mine in a given year, and that will not change if this decision is implemented."[39]

Despite these representations, the administrative record does not contain any air-quality permit or related emission data. For this reason, WildEarth asks that this material be added to the administrative record.[40] In response, the BLM states that it cannot confirm whether or not it considered this material in its decision to lease the Flat Canyon Tract.[41]

Based on the contents of the FEIS and SIR, the evidence is clear that the BLM and FS considered this material in connection with the Lease. But even if the BLM and FS had not considered this material, it is equally clear that they should have done so, as the FEIS and SIR purport to be predicated on this material and recognize its relevance. Thus, without this material in the record, the actions of the BLM and FS cannot be adequately explained or properly reviewed.

The Motion is GRANTED as to the air-quality permits and related emission data.

---

[38] FEIS, *supra* note 10, at BLM000123.

[39] SIR, *supra* note 17, at FS005820.

[40] Motion, *supra* note 1, at 11-12.

[41] Declaration of Kent Hoffman, *supra* note 31, ¶ 7.

**Some materials are not needed to complete or supplement the record.**

*Exhibits 18–31 will not be added.*

Attached to the Motion as "Exhibits 18–31" are fourteen documents related to climate change, which WildEarth believes should be added "to the record to help the Court assess whether significant new information about climate change arose after 2002 that the agencies should have addressed in a supplemental EIS."[42] According to WildEarth, the BLM and FS "paid the issue of climate change little heed" and "their administrative records have few documents discussing climate change."[43]

The BLM and FS did not ignore the issue of climate change in making their decision to lease the Flat Canyon Tract. Indeed, it is undisputed that they considered this factor.[44] Thus, there is no clear deficiency in the record necessitating the addition of Exhibits 18–31. WildEarth has failed to show otherwise. WildEarth has also failed to show that the actions of the BLM and FS cannot be properly reviewed without considering Exhibits 18–31.

The Motion is DENIED as to Exhibits 18–31.

*Regional lease documents will not be added.*

WildEarth asks that documents related to certain other lease applications in Utah, Colorado, Wyoming, and Montana be added to the administrative record to show "significant new information the agencies failed to consider . . . about the volume of greenhouse gas

---

[42] Motion, *supra* note 1, at 14.

[43] *Id.*

[44] SIR, *supra* note 17, at FS5820-FS5821.

emissions associated with new coal leases and the type of analysis the agencies are capable of preparing."[45]

The BLM and FS did not ignore greenhouse gas emissions as a factor in their decision to lease the Flat Canyon Tract. It is clear from the evidence that they considered this factor.[46] Thus, there is no deficiency for which the addition of regional lease documents is needed. Furthermore, the actions of the BLM and FS can be properly reviewed without considering these documents.

The Motion is DENIED with respect to regional lease documents.

*Greater sage-grouse publications will not be added.*

The BLM and FS published certain documents in October 2013 regarding threats to the greater sage-grouse in Utah.[47] WildEarth requests that these publications be added to the administrative record.[48] There is no evidence that either agency considered these documents in connection with the Lease. Indeed, WildEarth admits "that the BLM and [FS] did not consider" these materials.[49] There is also no evidence that either agency failed to consider the impact of the Lease on sage-grouse. Rather, as previously mentioned, the BLM considered a 2013 conservation report on the grouse, a copy of which is attached as Exhibit 34 to the Motion.[50]

Given that the actions in question can be properly reviewed without considering the October 2013 publications, the Motion is DENIED as to these publications.

---

[45] Motion, *supra* note 1, at 20.

[46] SIR, *supra* note 17, at FS5820-FS5821.

[47] *See* Motion, *supra* note 1, at 28.

[48] *Id.*

[49] *Id.* at 29.

[50] *See supra* text accompanying note 37.

**Discovery is unnecessary.**

"When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question."[51] There is—according to WildEarth—a gap in the record regarding why the BLM and FS abandoned their initial assumption in July 2012 that the FEIS had to be supplemented to effectuate the Lease.[52] To fill this gap, WildEarth requests permission to conduct limited discovery, including depositions, on this point.[53]

Contrary to WildEarth, there is not clear evidence that this gap exists. The record indicates that the BLM and FS changed their minds regarding the need to supplement the FEIS after "an internal review was conducted and a [SIR] was prepared by an inter-disciplinary team."[54] "Based on the summaries and conclusions of the SIR," it was determined that a supplement to the FEIS was not required.[55] Given this explanation, it is not clear that additional discovery is needed on this issue.[56]

In any event, the actions of the BLM and FS can be properly reviewed without considering additional information or material concerning this, as BLM and FS are allowed to "alter [their] past interpretation and overturn past administrative rulings and practice."[57]

---

[51] *Bar MK*, 994 F.2d at 740 (citation omitted).

[52] Motion, *supra* note 1, at 7-10.

[53] *Id.* at 9-10.

[54] Letter from FS to BLM, *supra* note 13, at 1.

[55] *Id.*; *see* Letter from FS to BLM, docket no. 70-13, dated July 17, 2012 (indicating that the FS would conduct an evaluation in coordination with the BLM before determining whether a supplemental environmental analysis was warranted).

[56] *See* SIR, *supra* note 17; DNA, *supra* note 17.

[57] *Am. Trucking Ass'n v. Atchinson, Topeka, & Santa Fe Ry. Co.*, 387 U.S. 397, 416 (1967).

Moreover, "it would hardly make sense to hold" the BLM and FS, "or any other agency, bound by the informal statements of [their] employees."[58]

The Motion is DENIED as to WildEarth's request to conduct discovery.

**Arguments regarding the "failure-to-act" claim are moot.**

Since the Motion's filing, an order was entered disallowing WildEarth's proposed "failure-to-act" claim under § 7601(1) of the APA.[59] Based on that ruling, the Motion's request for the adjudication of that claim "without limiting the scope of review to the administrative record" is MOOT and, accordingly, DENIED.[60]

## ORDER

THEREFORE, IT IS HEREBY ORDERED that the Motion is GRANTED in part and DENIED in part as specifically set forth above.

IT IS FURTHER HEREBY ORDERED that, *by no later than July 22, 2019*, the parties shall meet, confer, and file a proposed scheduling order, which must include deadlines for any authorized discovery, lodging the administrative record, supplementing the administrative record, and substantive briefing.

Signed July 8, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[58] *Abenaki Nation v. Hughes*, 805 F. Supp. 234, 243 (D. Vt. 1992).

[59] Memorandum Decision and Order Granting in Part and Denying in Part Motion to Amend Complaint, docket no. 82, filed February 13, 2017.

[60] *See* Supporting Supplement, *supra* note 1, at 3 (acknowledging that the "February 13, 2017 ruling . . . obviates the need for the Court to rule on Argument Section I of Plaintiffs' Motion to Add Documents"); Opposing Supplement, *supra* note 1, at 2-3 (same).